UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| RAQUEL S. EDWARDS,[1] | 17-CV-1074-MJR |
| Plaintiff, | DECISION AND ORDER |
| -v- | |
| COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | |

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 13).

Plaintiff Raquel S. Edwards (hereinafter "Plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied and the Commissioner's motion (Dkt. No. 15) is granted.

## **BACKGROUND**

Plaintiff filed her original application for SSI on February 17, 2009. That application was denied on February 14, 2011. (Tr. 106-11). On August 16, 2013, Plaintiff protectively filed her current application for SSI alleging disability since February 15, 2011 due to Multiple Sclerosis (hereinafter "MS") and a "cyst on [her] pituitary gland." (Tr. 247).[3] Born

---

[1] Plaintiff is currently married and has changed her last name to Crawford. *See* (Tr. 65).
[2] The Clerk of Court is directed to amend the caption accordingly.
[3] References to "Tr." are to the administrative record in this case.

in 1980, Plaintiff was thirty-five years old at the time of her most recent hearing. (Tr. 21, 127). She has an eleventh-grade education and has worked in the past as a Nurse's Assistant. (Tr. 21, 71, 95). Her current SSI application was denied on December 13, 2013 (Tr. 141-44). On March 16, 2016, Plaintiff, represented by counsel, appeared before Administrative Law Judge John G. Farrell (hereinafter "ALJ") for a hearing in Buffalo, New York. *Id.* At the hearing, Plaintiff amended her alleged onset date from February 15, 2011 to August 16, 2013. (Tr. 15, 66, 204). On June 1, 2016, the ALJ issued his decision denying Plaintiff's SSI claim. (Tr. 15-23). After the Appeals Council denied her request for review of the ALJ's decision on August 25, ss2017 (Tr. 1-5), Plaintiff commenced this action.

## **DISCUSSION**

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

3

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 to subpart P of part 404 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.*

4

§416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §416.920(f). If, based on that comparison, the claimant can perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his or her burden through the first four steps, "the burden then shifts

to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating Plaintiff's SSI claim. Under step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her SSI application date. (Tr. 17). At step two, the ALJ found that Plaintiff has severe impairments of MS and obesity. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19). Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §416.967(b) except the claimant can never climb ladders, ramps, and scaffolds; occasionally perform other postural activities; requires a sit/stand option every thirty minutes; and must avoid even moderate exposure to hazardous machinery and unprotected heights.

(Tr. 19). Proceeding to step four, the ALJ found that Plaintiff has no past relevant work performed at the level of substantial gainful activity. (Tr. 21). Thus, at the fifth step, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert to conclude that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as a Ticket Taker, Gambling Cashier, or Photocopy Machine Operator. (Tr. 95-96). Accordingly, the ALJ found that Plaintiff can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act. (Tr. 23).

IV.  *Plaintiff's Challenge*

Plaintiff contends the ALJ erred in improperly "play[ing] the role of doctor" when he "formulated an RFC based on mischaracterization of the medical evidence and without proper medical opinion." (Dkt. No. 10 at 13). Plaintiff specifically contends that (1) the record is devoid of a medical opinion related to Plaintiff's functional limitations caused by her MS and that (2) the ALJ improperly defined the words "stable" and "benign" to mean Plaintiff's condition was "good." *See* (Dkt. No. 10 at 14-15). The Court disagrees.

*Lack of medical opinion regarding MS*

Generally, a claimant bears the burden to prove she is disabled. 20 C.F.R. § 404.1512(a)(1). However, it is also the ALJ's responsibility to develop the record, and specifically, must attempt to fill any "clear gaps" in the administrative record. 20 C.F.R. § 404.1512(b). "[W]here there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Here, the ALJ left the record open for the opportunity to submit additional documentation from Plaintiff's primary care physician—to provide paperwork "in support of [Plaintiff's] claim." *See* (Tr. 68, 429-63). Her primary care physician, Dr. Hermogenes, appeared to provide those records. (Tr. 429-63). However, Plaintiff's MS was being treated by Dr. Lee-Kwen, M.D. (Tr. 345-48). Plaintiff provided treatment records from her initial visit with Dr. Lee-Kwen in September 2013 until October 2015 for a "recheck" on her MS. (Tr. 409, 421). Notably, Plaintiff did not seek treatment from Dr. Lee-Kwen for MS between November 2014 and October 2015. (Tr. 421). The record contained ample documentation from Dr. Lee-Kwen

7

regarding Plaintiff's MS. (Tr. 408-426). Plaintiff does not dispute the completeness of Dr. Lee-Kwen's medical records. Therefore, the Court finds that there are no clear gaps in the medical record and the ALJ possessed a complete medical history of Plaintiff related to her MS.

*Mischaracterization of evidence*

Plaintiff contends that the ALJ's interpretation of the term "stable" and use of the word "benign" in his decision were improper and amounted to the ALJ "playing doctor" in this instance. (Dkt. No. 10 at 17). The Court finds the ALJ properly interpreted Plaintiff's medical evidence. The term "stable", in fact, appears in Dr. Lee-Kwen's treatment notes because Plaintiff used this word to describe her MS condition. (Tr. 421) ("Patient states that her MS is stable."). Reviewing the entire record, it is also clear the ALJ used the word "stable" correctly to describe that Plaintiff's condition had not changed; the ALJ did not use the word "stable" to mean Plaintiff's condition was "good". *See Kohler v. Astrue*, 546 F. 3d 260 (2d Cir. 2008) (remanded, in part, because the ALJ interpreted the word "stable" to mean "good" instead of meaning claimant's condition had not changed). The ALJ also indicated that Plaintiff's MS treatment "remained benign" but goes on to explain in the following sentence that "[s]he receives the same treatment [for MS]" and that "[c]linical findings further support the above [RFC] that the claimant can perform light work." (Tr. 21). Therefore, the Court finds that the ALJ did not mischaracterize the medical evidence.

*RFC determination*

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (internal quotation omitted), *report and recommendation adopted,* 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). However, Plaintiff's physicians need not provide specific function-by-function assessments of her residual functional capacity if the medical record is extensive enough to support an informed residual functional capacity finding by the ALJ. *Leonard v. Colvin*, 2014 WL 1338813, *3 (W.D.N.Y. Mar. 31, 2014) (citing *Tankisi v. Commissioner of Social Security*, 521 F. App'x. 29, 34 (2d Cir. 2013); *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999)). The record is not devoid of any opinion from a medical source assessing Plaintiff's physical limitations. Dr. Abrar Siddiqui, M.D., provided an opinion that Plaintiff's impairments caused no limitations in her ability to sit, stand, climb, push, pull, or carry heavy objects; however, did opine that *her MS may cause these limitations in the future*. (Tr. 130). It is therefore clear from his report that Dr. Siddiqui considered Plaintiff's MS when formulating his opinion. The Court finds that Plaintiff's RFC is supported by substantive evidence.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**


Dated:  March 6, 2019
        Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge